```
              DISTRICT COURT OF THE VIRGIN ISLANDS
              DIVISION OF ST. THOMAS AND ST. JOHN

ANN HERMAN,                              )
                                         )
          Plaintiff,                     )
                                         )
     v.                                  )   Civil No. 2002-163
                                         )
THE BANK OF NOVA SCOTIA and ADONIS       )
MORTON,                                  )
                                         )
          Defendants.                    )
                                         )
```

ATTORNEYS:

**K. Glenda Cameron, Esq.**
Law Office of K. G. Cameron
St. Croix, VI
    *For the plaintiff.*

**Mathew J. Duensing, Esq.**
**James Bernier, Jr.**
Duensing, Casner, Dollison & Fitzsimmons
St. Thomas, VI
    *For the defendants.*

## MEMORANDUM OPINION

GÓMEZ, C.J.

Before the Court is the motion of the defendants, the Bank of Nova Scotia and Adonis Morton, to close this matter.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

On November 9, 1994 Ann Herman ("Herman") executed a promissory note evidencing a loan she received from the Bank of Nova Scotia ("Scotiabank"). As security for payment, Herman executed a mortgage on parcel 57T-20 Smith Bay, East End Quarter, St. Thomas, Virgin Islands, in favor of Scotiabank.

In March of 1999, contending that the loan was in default, the Bank initiated foreclosure proceedings against Herman. Sometime in 2000, Herman and the Bank agreed that Herman would pay a set amount and refinance her mortgage.

On or about September 5, 2002, Herman, initiated this action by filing a two-count complaint (the "Complaint") against the defendants, Scotiabank and Adonis Morton ("Morton"). In Count One she alleged negligent misrepresentation. In Count Two she alleged bad faith and duress.

The gravamen of the Complaint is that Scotiabank misled Herman as to the amount outstanding on her loan when it initiated foreclosure proceedings. She further alleges that she was then coerced into entering into the refinancing agreement by Scotiabank and its employee, Morton.

On September 9, 2005, Scotiabank and Morton moved for summary judgment.

On November 5, 2005, the parties entered into a written agreement captioned "Mediated Settlement Agreement." The Mediated Settlement Agreement provides:

> The parties to the matter entitled Herman v. Bank of Nova Scotia, 2002/163 (Dist. Ct. St. Thomas/St. John) agree to settle on the following terms:
>
> 1. Within 30 days the parties shall designate a mutually agreeable person to conduct an audit of the plaintiff's mortgage accounts with the defendant.
>
> 2. The defendant shall pay the entire cost of the

>   audit.
>
>   3. In the event the parties are unable to agree on a mutually acceptable auditor, they shall so inform the mediator . . . who shall then designate an auditor.
>
>   4. The parties agree to be bound by the auditor's determination as to the correct balance of the mortgage.
>
>   5. The parties shall advise the Court of the fact of the pending settlement, and shall also request that the Court retain jurisdiction (as alleged by plaintiff), pending final resolution.
>
>   6. The parties shall execute mutual general releases and shall stipulate to dismiss this action, with prejudice each side, to bear its own costs and fees. The mediator shall hold the releases and the stipulation for dismissal until advised by both parties that the audit has been completed.
>
>   7. The auditor shall determine what documents to review in conducting the audit.
>
>   8. The parties shall have ten days to review the auditor's report and shall submit any comments or objections to the report. The auditor shall consider the comments and objections within 7 days and may revise the report and conclusion in his or her sole discretion
>
>   9. Upon final determination by the auditor the plaintiff shall then apply for renewal of the mortgage loan at the prevailing interest rates . . . .
>
>   10. THE PARTIES HAVE READ AND UNDERSTAND THE TERMS AND CONDITIOSN OF THIS MEDIATED SETTLEMENT AGREEMENT AND SIGN IT KNOWINGLY AND VOLUNTARILY AND UPON CONSULTATION WITH COUNSEL.

(Pl.'s Ex. 1.)

The parties initialed the pages of the Mediated Settlement Agreement that contain paragraphs seven through ten. Below

paragraph ten, the Mediated Settlement Agreement was signed by Ann Herman and Matthew J. Duensing, Esq., on behalf of Scotiabank and Morton.

Shortly after the mediation, Herman moved to set aside the mediated agreement. She then withdrew that motion at a hearing on December 2, 2005. The Court memorialized this action by Order entered January 10, 2006.

After nothing further was heard from the parties, on April 7, 2006, the Magistrate Judge dismissed the matter without prejudice, stating "the Court retains jurisdiction to vacate this order to reopen the action upon cause shown, no later than sixty (60) days from the date hereof, that settlement has not been completed and further litigation is necessary" (the "April 7, 2006, Order").

On May 8, 2006, Herman moved to vacate the April 7, 2006, Order, stating that the parties had agreed the case would not be dismissed "until the Auditor has completed his or her review." Three months later, in July of 2006, the Magistrate Judge reopened the case.

On August 31, 2006, the Magistrate Judge issued an Order that recognized that "counsel had agreed on Ms. [Lenore Lee] Edgecombe as the independent accountant."

In September of 2006, then-counsel for Herman withdrew, and Herman continued to proceed with this matter on a *pro se* basis.

Throughout 2007, the Magistrate Judge held a series of conferences to address various disputes related to the selection of the auditor pursuant to the Mediated Settlement Agreement.

At the same time, the Bank urged that it either be granted summary judgment on its previously-filed motion, or that the Mediated Settlement Agreement be "enforced." On May 18, 2007, the Court held a hearing in which it ordered further proceedings be had on the independence of Edgcombe.

On May 22, 2007, the Magistrate Judge by an order noted that Herman had once again engaged counsel. On May 30, 2007, the Magistrate Judge conducted an evidentiary hearing "on the issue of whether . . . Edgcombe's impartiality was compromised when she prepared an analysis dated September 2006 on records and information obtained solely from" plaintiff.

On June 13, 2007, the Magistrate Judge found there was nothing in the record from which to question Edgecombe's impartiality, and directed Edgecombe to meet with the Bank's representatives to review the Bank's records and submit a revised analysis. After the Bank's appeal, the Court affirmed the Magistrate Judge's Order on June 27, 2007 (the "June 27, 2007, Order").

The Bank then appealed the June 27, 2007, Order to the Court of Appeals for the Third Circuit. The appeal was subsequently dismissed "in accordance with the agreement of the

Case: 3:02-cv-00163-CVG-RM   Document #: 169   Filed: 09/28/12   Page 6 of 17
*Herman v. Bank of Nova Scotia*
Civil No. 2002-163
Memorandum Opinion
Page 6

parties." (November 16, 2007, Mandate of Third Circuit.)

On January 28, 2008, Herman filed a motion for a status hearing or alternatively seeking judgment in her favor. Specifically, she requested an order enforcing the Mediated Settlement Agreement by adopting Edgecombe's audit report "since the parties had agreed on Ms. Edgecombe as the Auditor and to be bound by the Auditor's findings." The Magistrate Judge scheduled a status conference for February 5, 2008, but the docket does not reflect whether this conference took place.

On March 20, 2008, this Court entered an Order of dismissal (the "March 20, 2008, Order"). The March 20, 2008, Order provides in full:

> The Court has been advised that this matter has been settled. Accordingly, it is hereby
> ORDERED that the trial setting is vacated and all pending motions are denied; and it is further
> ORDERED that the above-captioned matter is DISMISSED with prejudice; and it is further
> ORDERED that each party shall bear its own costs and expenses in connection with this matter; and it is further
> ORDERED that the Court retains jurisdiction for sixty days from the date of this Order to enforce the settlement; and it is further
> ORDERED that the Clerk of the Court shall close this matter.
>
> S\_____
> Curtis V. Gómez
> **Chief Judge**

Notwithstanding the March 20, 2008, Order, the Magistrate Judge continued to assist the parties in completing the audit

required by the Mediated Settlement Agreement. On May 20, 2008, Herman filed a motion, purporting to respond to the March 20, 2008, Order (the "May 20, 2008, Motion"). The May 20, 2008, Motion largely reiterates the claims raised in Herman's Complaint. The Magistrate Judge found this motion to be moot.

Thereafter, the Magistrate Judge continued to extend the deadline for the completion of the audit. On July 17, 2008, the Bank notified the Court it had received the updated audit from Edgecombe. In response, Herman filed a document in which she requests to renegotiate the settlement based upon the auditor's findings.

The Bank, not satisfied with the audit report, sought and was granted leave to depose Edgecombe. The deposition was continued several times. Finally, on October 9, 2008, the Bank submitted a "Notice" with an attached letter dated August 15, 2008, from Edgecombe. In that letter, Edgecombe states that she intends to withdraw from any further involvement in this matter.

On May 18, 2010, the Bank brought an action for debt and foreclosure against Herman and others in the Superior Court of the Virgin Islands. That action was removed to this Court on June 17, 2010, and is docketed as Case No. 2010-cv-65. That action involves the mortgage entered into in 2000 after settlement of the initial foreclosure action.

No further developments took place in this matter until

July 29, 2010, when new counsel filed a notice of appearance on behalf of Herman.

On August 24, 2010, Herman moved for vacatur of the March 20, 2008, Order and for this case to be reopened (the "Motion to Reopen"). In the motion Herman asks the Court to "reopen" this case and to "address the issue of any and all settlement."

On April 3, 2011, the Court issued an order providing that the March 20, 2008, Order is vacated "only insofar as it directs the Clerk of the Court to close the matter. In all other respects the March 20, 2008 order remains in effect" (the "April 3, 2011, Order").

On January 31, 2012, Scotiabank and Morton moved for vacatur of the April 3, 2011, Order. They argue that the Court is without jurisdiction to consider this matter because the March 20, 2008, Order was a final judgment. Further, inasmuch as Herman now seeks enforcement of the Mediated Settlement Agreement, they maintain that the Court retained jurisdiction to hear such matters for only sixty days after the entry of the March 20, 2008, Order.

On February 15, 2012, the Court held a status conference in this matter. The Court apprised the parties of the Motion to Reopen and requested that Herman submit a brief detailing the precise relief sought.

In response to the Court's request, Herman confusingly

requests both "a decision on the merits of her Complaint" as well as "enforce[ment] of the . . . settlement or agreement that the parties will be bound by the findings of the audit of . . . Edgecombe." (Pl.'s Resp. at 3, 4.)

On September 20, 2012, the Court held a hearing in this matter. Afterwards, the Court requested that the parties submit briefs addressing whether the March 20, 2008, Order was a final judgment.

In response, Herman argues that (1) the March 20, 2008, Order was not a final judgment, and (2) even if it were, Herman moved within sixty days for enforcement of the March 20, 2008, Order. Scotiabank maintains its position that the March 20, 2008, Order was a final judgment and that this Court no longer has jurisdiction to enforce it in this case.

## II. DISCUSSION

### A. Finality

"[A] final decision . . . [is] ' . . . one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " *Penn W. Assocs., Inc. v. Cohen*, 371 F.3d 118, 125 (3d Cir. 2004). It must be "sufficiently firm to be accorded conclusive effect." RESTATEMENT (SECOND) OF JUDGMENTS, § 13. The Court of Appeals for the Third Circuit has described a final judgment as "one which disposes of the whole subject, gives all the relief that was contemplated, provides with

reasonable completeness for giving effect to the judgment and leaves nothing more to be done in the cause save to superintend, *ministerially*, the execution of the decree." *Isidor Paiewonsky Assocs., Inc. v. Sharp Props., Inc.*, 998 F.2d 145, 150 (3d Cir. 1993) (quoting *In re Moody*, 825 F.2d 81, 85 n.5 (5tt Cir. 1987). The Third Circuit has also explained that "a final decision will have two effects: First, the decision will fully resolve all claims presented to the district court. Second, after the decision has been issued, there will be nothing further for the district court to do." *ALCOA v. Beazer East, Inc.*, 124 F.3d 551, 557 (3d Cir. 1997).

**B.   Settlements**

In the Third Circuit, "[a]n agreement to settle a law suit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court, and even in the absence of a writing." *Green v. John H. Lewis & Co.*, 436 F.2d 389, 390 (3d Cir. 1970); *see also Beazer East, Inc. v. Mead Corp.*, 412 F.3d 429, 436 (3d Cir. 2005). "Settlement agreements are encouraged as a matter of public policy because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by courts." *D.R. by M.R. v. East Brunswick Bd. of Educ.*, 109 F.3d 896, 901 (3d Cir. 1997). In the Virgin Islands, counsel may enter into a settlement agreement on his client's behalf when he has actual or apparent authority to

do so. *See Edwards v. Born, Inc.*, 792 F.2d 387, 389-90 (3d Cir. 1986).

The construction and enforcement of settlement agreements are governed by principles of local law applicable to contracts generally. *See, e.g., Vargo v. Mangus*, 94 Fed. Appx. 941, 943 (3d Cir. 2004); *New York State Electric & Gas Corp. v. Federal Energy Regulatory Commission*, 875 F.2d 43, 45 (3d Cir. 1989); *Christian v. All Persons Claiming any Right, Title or Interest in Newfound Bay*, 139 F. Supp. 2d 679, 685 (D.V.I. 2001). The local law generally applicable to contracts in the Virgin Islands is the Restatement (Second) of Contracts. *Ventura v. Pearson*, Civ. No. 60-1980, 1980 V.I. LEXIS 88, at *111 n.2 (Terr. Ct. July 31, 1980) (citing 1 V.I.C. § 4).

The essential prerequisites for the creation of a valid contract is "a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." *Univ. of the V.I. v. Petersen-Springer*, 232 F. Supp. 2d 462, 469 (D.V.I. App. Div. 2002); Restatement (Second) of Contracts § 17 (1981). "Consideration" requires a performance or a return promise that has been bargained for. Restatement (Second) of Contracts § 17. Where there is no mutual assent, or no meeting of the minds, there is no contract. *James v. Fitzpatrick*, Civ. No. 885-1989, 1990 V.I. LEXIS 22, at *4 (Terr. Ct. Oct. 30, 1990).

### III. ANALYSIS

**A.   Finality**

It is axiomatic that a judgment is "a decision upon a cognizable claim for relief." *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 7 (1980). To enjoy the benefit of being such an enforceable decree, a settlement must be transformed. Indeed,

> [a] settlement is a contract, but when incorporated into a judgment, becomes a court decree. Whether it is a valid contract between the parties is determined by reference to state substantive law governing contracts generally. . . . Whether a settlement agreement, thus tested under state law, has been accepted by a federal court and properly incorporated into a valid and enforceable judgment is purely a matter of federal procedure. Federal courts have the inherent power to enforce settlement agreements entered into by the parties litigant in a pending case, to determine compliance with procedural prerequisites, and to determine when, if ever, a party may repudiate a contractually binding settlement agreement.

*White Farm Equip. Co. v. Kupcho*, 792 F.2d 526, 529 (5th Cir. 1986).

Here, the Court's March 20, 2008, Order simply recognized that the Court received notice of a settlement. The Mediated Settlement Agreement was not made part of a court order. Moreover, the March 20, 2008, Order was not a decision on any cognizable claim that was "unambiguous on its face so that counsel or a party consulting the docket will have no reasonable basis for doubt as to the nature and effect of what has been

done or as to the timeliness of further proceedings." *Danzig v. Virgin Isle Hotel, Inc.*, 278 F.2d 580, 582 (3d Cir. 1960).

A party, at best, may argue that a court order dismissing a case in light of settlement is a final judgment. The Court is not persuaded that that argument is the winning one, however. Rather, the Court is persuaded that "[w]hen a settlement agreement is not made part of a court order, it is merely a private contract arising out of a case in federal court . . . ." *Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1281 (11th Cir. 2012) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 380 (1994)); *see also Otis v. City of Chicago*, 29 F.3d 1159, 1163 (7th Cir. 1994) ("[A final judgment] should be a self-contained document, saying who has won and what relief has been awarded . . . .").

**B.    Settlement Agreement**

What is not debatable is that a court order incorporating or referencing the terms of a settlement is a final and enforceable order of the court. *See White Farm Equip.* 792 F.2d at 529.

In *Nicholas v. Wyndham Int'l, Inc.*, Civil No. 2001-147 (CVG), 2007 U.S. Dist. LEXIS 91829, 2007 WL 4811566 (D.V.I. Nov. 20, 2007), this Court entered judgment on a settlement agreement where the parties had recited the essential terms of it before the Court. *Id.* at *5. After the recitation, the defendants

refused to sign the settlement agreement. *Id.* at *1. This Court held that the recitations of the parties were binding and covered all essential terms. *Id.* at 3-4. Accordingly, this Court entered a judgment approving the settlement agreement. *Id.* at 5. Here, the Defendants have signed the settlement agreement, and now only refuse to sign the consent judgment proposed by the agreement. Because the written settlement agreement covers all the terms of the agreement, it is a binding contract on the parties and may be approved by this Court.

Based on the Mediated Settlement Agreement, the Court finds:

    1.    The parties reached a resolution.

    2.    The parties agreed to retain an auditor to conduct an audit of Herman's mortgage accounts with Scotiabank.

    3.    The auditor shall determine what documents to review in the course of conducting the audit.

    3.    Scotiabank will pay the entire cost of the audit.

    4.    The parties will be bound by the auditor's determination as to the correct balance of Herman's mortgage.

    5.    The parties shall have ten days to review the auditor's report and shall submit any comments or objections to the report. The auditor shall consider the comments and objections within 7 days and may revise the report and conclusion in his or her sole discretion

    6.    Upon final determination by the auditor the plaintiff shall then apply for renewal of the mortgage loan at the prevailing interest rates.

Here, the written agreement presented to the Court detailed all the terms of the settlement. Included in the terms was Herman's proposal to dismiss the instant lawsuit in exchange for an auditing of the mortgage records, and the amendment of the mortgage financing documents to reflect the auditor's report. The parties both personally signed the settlement agreement below the words "THE PARTIES HAVE READ AND UNDERSTAND THE TERMS AND CONDITIONS OF THIS MEDIATED SETTLEMENT AGREEMENT AND SIGN IT . . . UPON CONSULTATION WITH COUNSEL."

The written terms of the agreement establish that it was supported by consideration on both sides. *See, e.g.*, *Channel Home Ctrs., Div. of Grace Retail Corp. v. Grossman*, 795 F.2d 291, 299 (3d Cir. 1986) (noting that "of course, there must be consideration on both sides . . . for enforceability of a[] [settlement] agreement") (applying Pennsylvania law); *Shernoff v. Hewlett-Packard Co.*, Civ. No. 04-4390, 2006 U.S. Dist. LEXIS 87518 at *7, 2006 WL 3497798 (D.N.J. Dec. 4, 2006) ("Plaintiff and Defendant agreed to the essential terms of the settlement, namely, that Plaintiff would forego her claims against Defendant and surrender her options to purchase HP stock in return for a payment of $37,500."). Herman promised to dismiss her claims in this matter. In exchange, Scotiabank agreed to renew the mortgage based on the auditor's report.

The Settlement Agreement was also at least partially performed, inasmuch as the services of an auditor were retained and a report generated. The parties' signatures, exchange of consideration, and the partial performance evidences the parties' meeting of the minds and mutual assent to those terms. *See, e.g.*, *Tracy v. Kimberly-Clark Cop.*, 74 Fed. App'x 44, 47 (Fed. Cir. 2003) ("A meeting of the minds between the parties occurs where there has been assent to all the essential terms and conditions."); *MIF Realty L.P. v. Rochester Assocs.*, 92 F.3d 752, 756 (8th Cir. 1996) ("To be enforceable, a settlement agreement must be based upon a meeting of the minds on the essential terms of the agreement.") (citation and quotation omitted). Accordingly, an appropriate judgment approving the settlement will be entered.[1]

## IV. CONCLUSION

The Court appreciates that the parties still dispute a number of issues. However, these issues are unrelated to the claims which were asserted in the Complaint--namely, that Scotiabank miscalculated the amount of Herman's debt and coerced her into agreeing to a refinancing arrangement. Instead, the parties have spent the past seven years in an apparently intractable dispute about how to audit Herman's account. The

---

[1] The Mediated Settlement Agreement will be attached to, and made a part of, the Judgment.

Court does not today pass judgment on the merits of that dispute. Indeed, it cannot, for that dispute is not properly before it.

What is properly before the Court is a Complaint that seeks, at its core, to have Herman's debt recalculated to reflect the true amount owed. The Mediated Settlement Agreement purports to do precisely that. In light of the settlement, and the Court's March 20, 2008, Order, there is simply nothing left for the Court to do in this case. That is not to say that more work may yet need to be done to ensure the parties comply with the Mediated Settlement Agreement. That, however, is a question for a different case.[2]

An appropriate judgment follows.

S\_____
Curtis V. Gómez
**Chief Judge**

---

[2] Of course, the failure to comply with any provision of the Mediated Settlement Agreement may give rise to a breach of contract claim. If so, such a claim is appropriately left for resolution in a state or territorial court. *See generally Kokkonen*, 511 U.S. at 380-81, 82 (explaining that enforcement of a contract is a matter for state courts).